U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 3 2010

CLERK, U.S. DISTRICT COURT
By_____
   Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DORIS JAUREGUI,<br>    Plaintiff, | §<br>§<br>§ |
| VS. | § CIVIL ACTION NO. 4:09-CV-575-A<br>§ |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | §<br>§<br>§ |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

I. STATEMENT OF THE CASE

Plaintiff Doris Jauregui ("Jauregui") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Jauregui applied for disability insurance benefits and SSI on March 8, 2007, with an alleged disability onset date of August 31, 1995. (Transcript ("Tr." 32, 185-90, 193-97, 214.) Jauregui

remained insured for purposes of disability insurance benefits through December 21, 2000.[1] (Tr. 200.) After her applications were denied initially and on reconsideration, Jauregui requested a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ Larry C. Marcy in Houston, Texas on January 13, 2009. (Tr. 59-85.) The ALJ issued an unfavorable decision on March 9, 2009. (Tr. 32-40.) The Appeals Council denied Jauregui's request for review of this decision on January 31, 2009, leaving it to stand as the final decision of the Commissioner. (Tr. 1-3.) Jauregui subsequently filed the instant action in federal court on October 2, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v.*

---

[1] Disability must be established on or before that date to establish entitlement to disability insurance benefits. *See generally Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981). This date does not affect a claim for SSI benefits; however, SSI benefits cannot be paid for the time preceding an application for benefits even if disability began earlier. *See* 20 C.F.R. § 416.335.

*Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's.

*Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Jauregui presents the following issues:

1. Whether the ALJ properly considered the opinions of Jauregui's treating physicians; and

2. Whether Jauregui suffered prejudice as a result of the ALJ's rejection of the opinions of her treating physicians.

*See* Plaintiff's Brief ("Pl. Br.") at 1.

### IV. ADMINISTRATIVE RECORD

A. <u>Background</u>

Jauregui has a high-school education and past relevant semi-skilled work. (Tr. 39.) She was 58 years old on the date of the ALJ's decision, and she was 49 years old on the date she was last insured for purposes of receiving Title II disability insurance benefits. (Tr. 200, 104, 184, 40.) Jauregui claimed to be disabled as a result of injuries in her neck, lower back, and left arm, as well as right leg pain, leg numbness, and carpal tunnel syndrome. (Tr. 32, 185-90, 193-97, 214.)

B. <u>The ALJ's Decision</u>.

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 32-40.) At step one, the ALJ found that Jauregui last met the disability insured status requirements of the Social Security Act on December 31, 2000. (Tr. 34.) He also found that she had not engaged in substantial gainful activity since August 31, 1995. (*Id.*, citing 20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*)

At step two, the ALJ determined that Jauregui had the severe impairments of cervical and lumbar degenerative disc disease and carpal tunnel syndrome. (Tr. 35, citing 20 C.F.R. § 404.1521 and 416.921.)

The ALJ continued to step three, finding that Jauregui did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 35, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.) The ALJ then formulated Jauregui's residual functional capacity ("RFC") as follows:

> [Jauregui] retains the residual functioning capacity, over a sustained period of time, to perform the full range of light work,[2] further limited by no overhead work and no constant handling.

(Tr. 26-27.)

At step four, the ALJ found that Jauregui was unable to perform any of her past relevant work. (Tr. 38.) Moving on to step five, the ALJ determined that Jauregui, born on February 24, 1951, was classified as a person of "advanced age," that she has a high school education, a semi-skilled work history, and the transferable work skills of working with the public and information gathering and giving. (Tr. 38-39.) The ALJ considered the testimony of the vocational expert ("VE") along with Jauregui's RFC, age, education, and past work experience and concluded that she was capable of performing a significant number of jobs in the national economy. (Tr. 39.) Specifically, the ALJ found Jauregui capable of performing the job of information clerk, with 111,000 jobs in the national economy and 8,500 jobs in the state economy, and the job of receptionist, with 181,000 jobs in the national economy and 12,000 jobs in the state economy. (*Id.*)

---

[2] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b), 416.967(b).

Ultimately, the ALJ found that Jauregui was not disabled within the meaning of the Act at any time from her alleged date of onset through the date of the decision. (Tr. 40.)

V. <u>DISCUSSION</u>

A. <u>Whether the ALJ properly considered the opinions of Jauregui's treating physicians.</u>

Jauregui first asserts that the ALJ erred in failing to give controlling weight to the opinions of Jauregui's treating physicians, doctors Hooshang Kasravi, M.D. ("Kasravi"), Emil T. Martinez, M.D. ("Martinez"), and Stanley Josephs ("Josephs") without providing good cause for rejecting their opinions. (Pl. Br. at 4-12.) In this same point of error, Jauregui claims that the ALJ's RFC, finding that Jauregui retains the ability to perform light work, limited by an inability to perform overhead work or work requiring constant handling, is not supported by substantial evidence. (Pl. Br. at 4.)

An ALJ assigns controlling weight to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). But the determination of disability always remains within the province of the ALJ, and the ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d at 237; *see also* 20 C.F.R. § 404.1527(e).

The ALJ performed a thorough analysis of Jauregui's condition and concluded that she had some impairing conditions, but none that qualified as disabling. (Tr. 34-40.) Moreover, the Court finds that the opinions of Jauregui's treating physicians do not contradict the ALJ's RFC assessment. First, Jauregui argues that the ALJ's RFC assessment in inconsistent with the opinion of Kasravi,

who treated Jauregui from October 2001 through October 2005. On June 14, 2005, Kasravi opined that Jauregui "should avoid heavy work with no repetitive motions of the neck or back and no repetitive bending, stooping or lifting." (Tr. 368.) Kasravi also noted on June 14, 2005 that Jauregui's range of motion in her cervical spine was restricted (Tr. 367), but four months later, on October 25, 2005, he found that she had a full range of motion in her cervical spine. (Tr. 371.) Kasravi also found that Jauregui had a normal gait and that her neurological examination "revealed no motor or sensory deficits" aside from "slightly decreased sensation to pinprick over the left arm." *Id.* The Court finds that the ALJ's assessment did not reject Kasravi's opinion, but rather incorporated many of his objective medical findings into his RFC formulation, which incorporated a weight lifting limitation as well as other restrictions..

Next, Jauregui claims that the ALJ's RFC assessment is deficient in light of the opinion of Martinez. (Pl. Br. at 8-9.) Martinez opined on September 28, 2006 that Jauregui was unable to perform any type of work using both hands, wrists, and forearms, and that she was unable to sit for long periods of time. (Tr. 450.) An ALJ is free to reject a treating physician's opinions, however, when the medical evidence supports a contrary conclusion. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citations omitted). In this case, William Mouradian, M.D. ("Mouradian") of USC Orthopaedic Surgery Associates performed an agreed medical reexamination of Jauregui on January 4, 2006. (Tr. 382.) During that examination, Jauregui reported to Mouradian that the surgery she underwent in April 2004 greatly improved her condition. (Tr. 382.) Following his examination of Jauregui, Mouradian found that Jauregui "should be precluded from repetitive motions of the wrist and prolonged maintenance of the wrist in positions of flexion," and placed a 25 pound weight restriction on her, noting that she did not currently have evidence of carpel tunnel

syndrome. (Tr. 382-83.)[3] The ALJ took the weight restriction into account in providing his RFC assessment for light work with additional restrictions. Although the ALJ did not provide an additional restriction prohibiting work that requires use of both hands, wrists and forearms, the descriptions of the specific jobs identified by the ALJ at step five, information clerk and receptionist, do not contain any mention of a need to use both hands, wrists and forearms. *U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT")*, §§ 210.3676-010; 237.367-038 (4th ed., rev. 1991). Thus, this specific restriction is not implicated by the jobs identified by the VE and the ALJ at step five. *See, e.g., Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000) (noting that the specific jobs identified could be performed with one hand as the *DOT* job descriptions did not contain any requirement of bilateral fingering ability or dexterity).

Finally, Jauregui claims that the ALJ did not properly weigh the opinions of Josephs. (Pl. Br. at 9-11.) Specifically, Jauregui argues that the ALJ's reference to "inconsistencies" in Josephs' opinions reflects the ALJ's own interpretation of the medical evidence. (*Id.* at 11.) The ALJ evaluated Josephs' opinion and used Josephs' findings to illustrate the inconsistencies between Jauregui's allegations and the objective medical evidence in the record. For example, Josephs examined Jauregui and found no evidence of gross deformity, no muscular rigidity or spasm, and no palpable tenderness in the paraspinal musculature bilaterally. (Tr. 431.) Josephs also found that Jauregui could actively flex her chin to her chest and found that extension and lateral rotations of her cervical spine were normal. (Tr. 432.) As for Jauregui's wrists, Josephs found no evidence of gross deformity, local tenderness, or local swelling. (Tr. 435-36.) And he found that Jauregui was able

---

[3] Mouradian also restricted Jauregui from "substantial work" for her lumbar spine condition, but it is unclear from the record what this means because he failed to provide any further explanation. (Tr. 383.)

to push against her body weight without pain in her wrists. (*Id.*) Josephs found that Jauregui was capable of making a complete fist, bringing her fingertips to the mid-palmar crease with complete extension of all of her fingers. (*Id.*) With regard to her lumosacral spine, Josephs found that Jauregui had a full forward bend range of motion, that she was able to bring her fingertips to her toes, and that she could walk on her heels and toes. (Tr. 436-37.) He found that her straight leg raising in the sitting position with the back erect was negative bilaterally, and that in the supine position, it was positive on the right and left at 90 degrees for pain in the low back. (Tr. 446.) Ultimately, Josephs recommended conservative treatment, including medications and physical therapy on an as-needed basis. (Tr. 446.) The ALJ properly evaluated Jauregui's subjective allegations in light of Josephs' objective findings. (*See, e.g.*, Tr. 38.) And to the extent the ALJ did not incorporate limitations found by Josephs into his RFC, those limitations were contradicted by subsequent examinations and diagnostic tests describing her carpal tunnel syndrome as mild or very mild. (*See, e.g.*, Tr. 522, 524.) Notably, Mouradian found in 2006 that there was no longer any clinical evidence of carpal tunnel syndrome. (Tr. 544.) *See Epps v. Astrue*, No. 4:08-cv-407, 2009 WL 1117309, at *4-5 (N.D. Tex. April 24, 2009) (McBryde, J. adopting the findings and recommendations of Bleil, J.) (claimant with carpal tunnel syndrome had an RFC for a limited light range of work, where recent objective findings did not support subjective complaints).

The Court finds that the ALJ properly considered the opinions of doctors Kasravi, Martinez and Josephs in formulating Jauregui's RFC. (Tr. 35). The Commissioner has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). Jauregui's claims that the ALJ improperly evaluated the opinions of her treating physicians is without merit.

B. Whether Jauregui suffered prejudice as a result of the ALJ's rejection of the opinions of her treating physicians.

Jauregui next claims that she suffered prejudice as a result of the ALJ's rejection of her treating physicians' opinions. (Pl. Br. at 12-14.) According to Jauregui, had the ALJ accorded proper weight to the opinions of doctors Kasravi, Martinez, and Josephs, he might have reached a different result and found her totally disabled under the Act. (*Id.*) As discussed previously, the ALJ's RFC assessment included many of the treating physicians' restrictions by limiting Jauregui to work at a light exertional level with no overhead work and no constant handling. (Tr. 35-38.) And to the extent that certain limitations placed on Jauregui's ability to work by her treating physicians were not included in the RFC assessment, those limitations are not incompatible with performance of the jobs specifically identified by the VE and ALJ – information clerk and receptionist. According to the *DOT*, both occupations are performed not at the light exertional level but at the sedentary exertional level. *See U.S. Dep't of Labor, DOT*, 210.367-010; 237.367-038 (4th ed., rev. 1991). "Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Neither job description mentions a need to engage in repetitive motions of the neck or back, repetitive bending, stooping, lifting, or any repetitive or prolonged gripping, grasping, squeezing, torquing, pushing, pulling, or neck movements. *See id.*

Jauregui also criticizes the ALJ's hypothetical question posed to the VE. (Pl. Br. at 13-14.) She claims that the VE's testimony at step five did not provide substantial evidence because the ALJ did not include all of Jauregui's limitations. (*Id.*) Jauregui was, however, represented by counsel at her hearing before the ALJ. And her counsel failed to ask the VE any questions regarding further

exertional limitations or physical restrictions recommended by Jauregui's physicians, instead focusing solely on Jauregui's alleged inability to concentrate due to medication. (Tr. 82.) "[W]here the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet [her] burden of proof under the fifth step of the disability analysis." *Perez v. Barnhart*, 415 F.3d 457, 464 (th Cir. 2005) (attorney neither cross-examined the VE nor offered contradictory evidence). Accordingly, the Court finds that Jauregui did not suffer prejudice as a result any failure of the ALJ to include all restrictions suggested by her treating physicians in the RFC he formulated for her.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file, within fourteen (14) days after the party has been served with a copy of this document, specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The court is hereby extending the deadline until **December 24, 2010**, within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or

manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **December 24, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
December 3, 2010

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE